# EXHIBIT "A"

Case 8:15-cv-00576-CJC-RNB   Document 1-1   Filed 04/10/15   Page 1 of 19   Page ID #:6

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

313
10:03 AM

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COLUMBIA CAPITAL LLC, a Nevada limited liability company;
LARRY SMEAD, an individual, and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PAT O'MALLEY, an individual; KRISTIN EVANS, an individual

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED** |
| Superior Court of California, |
| County of Orange |
| 02/20/2015 at 09:47:00 AM |
| Clerk of the Superior Court |
| By Elizabeth Cramer, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Orange County Superior Court
700 Civic Center Drive West, Central Justice Center
Santa Ana, California 92701

| CASE NUMBER: |
| --- |
| *(Número del Caso):* |
| 30-2015-00772397-CU-WT-CJC |

Judge Peter Wilson

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Richard Lloyd Sherman, Esquire, 9454 Wilshire Blvd., #850, Beverly Hills, CA 90212 - (310) 246-0321

DATE: 02/20/2015       ALAN CARLSON, Clerk of the Court       Clerk, by _____, Deputy
*(Fecha)*                                                      *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

Elizabeth Cramer

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
   COLUMBIA CAPITAL, LLC A NEVADA LIMITED LIABILITY COMPANY
3. ☒ on behalf of *(specify):*

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 3/13/15

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

RICHARD LLOYD SHERMAN (STATE BAR NO. 106597)
ABHAY KHOSLA (STATE BAR NO. 223555)
SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212
Telephone: (310) 246-0321
Facsimile: (310) 246-0305

Attorneys for Plaintiffs
PAT O'MALLEY AND KRISTIN EVANS

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

02/19/2015 at 11:20:43 AM

Clerk of the Superior Court
By Elizabeth Cramer, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

PAT O'MALLEY, an individual; KRISTIN EVANS, an individual,

Plaintiff,

v.

COLUMBIA CAPITAL LLC, a Nevada limited liability company; LARRY SMEAD, an individual, and DOES 1 through 20, inclusive,

Defendants.

CASE NO. 30-2015-00772397-CU-WT-CJC

Judge Peter Wilson

COMPLAINT FOR:

1. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY AND IN RETALIATION FOR WHISTLEBLOWING;
2. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;
3. MISREPRESENTATIONS IN VIOLATION OF *CALIFORNIA LABOR CODE* §970; and
4. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Plaintiffs PAT O'MALLEY and KRISTIN EVANS allege as follows:

## PARTIES

1. Plaintiff PAT O'MALLEY ("*O'Malley*") is and at relevant times mentioned herein has been an individual residing in the County of Los Angeles.

2. Plaintiff KRISTIN EVANS ("*Evans*") is an individual residing in Orange County, California. O'Malley and Evans are sometimes referred to herein collectively as the "*Plaintiffs*."

3. Defendant COLUMBIA CAPITAL LLC ("*Columbia Capital*") is, and at all relevant times mentioned herein has been, a limited liability company duly organized and existing under the laws of the State of Nevada, with its principal place of business located at 2750 Moore Ave., Fullerton, California 92833.

4. Defendant Larry Smead ("*Smead*") is, and at all relevant times mentioned herein was a resident of the County of Litchfield, State of Connecticut.

5. The true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 20, inclusive ("*DOE Defendants*"), are unknown at this time, and said defendants are therefore sued by such fictitious names. Plaintiffs will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained. Plaintiffs are informed and believe and on such information and belief allege that the DOE Defendants, and each of them, are in some manner responsible for the acts and omissions hereinafter alleged and a legal cause of the damages suffered by Plaintiffs hereinafter alleged.

6. Plaintiffs are informed and believe and on such information and belief allege that in acting or omitting to act as hereinafter alleged the DOE Defendants, or one or more of them, were the agents, servants and employees of one or more of the named defendants, acting or omitting to act within the course and scope of their authority as such agent(s), servant(s) and/or employee(s).

7. Columbia Capital, Smead, and the DOE Defendants are sometimes hereinafter collectively referred to as "*Defendants*."

### ALTER EGO RELATIONSHIP OF DEFENDANTS

8. Plaintiffs are informed and believe and on such information and belief allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership among the Defendants such that individuality and separateness between these Defendants has ceased to exist, and Columbia Capital is the alter ego of Smead.

9. Upon information and belief, Plaintiffs further allege that said Defendants are the alter ego of the corporate Defendants in that (a) activities and business of Defendant corporations were carried out without the holding of directors' or shareholders' meetings, (b) no records or minutes of any corporate proceedings were maintained, (c) Defendants entered into personal transactions with

defendant corporations without the approval of other directors or shareholders, and/or (d) Defendants have used assets of the corporations for their personal uses, caused assets of the corporations to be transferred without adequate consideration and/or have withdrawn funds from the corporations' bank accounts for their personal use.

10. Plaintiffs allege that Smead has completely controlled, dominated, managed and operated said corporate Defendants and intermingled his personal assets with those of the corporations to suit the convenience of Smead. Defendant corporations are, and at all times herein mentioned were, mere shells, instrumentalities, conduits and/or skeletal frameworks used by Smead for his personal purposes and that if any records are kept and maintained by Defendant corporations, those records were created to cover up the manipulation and dominance by Defendants that occurred prior to the preparation of said records.

11. Fraud and injustice would be promoted by adherence to the fiction of the corporate existence of the Defendant corporations separate and apart from the other Defendants, and Defendants should not be allowed to evade justice by asserting the corporate veil.

## JURISDICTION AND VENUE

12. The Court has personal jurisdiction over the Defendants because they are residents of and/or doing business in the State of California.

13. Venue is proper in this county in accordance with Section 395(a) of the *California Code of Civil Procedure* because the Defendants, or some of them, reside and/or do business in this county, and the injuries alleged herein occurred in this county.

## GENERAL FACTUAL ALLEGATIONS

14. Columbia Capital is an asset management company, and one of a number of related companies controlled by Larry Smead ("*Smead*"). Prior to the formation of Columbia Capital on September 19, 2011, Smead operated his asset management operations *via* a company named Invest-U LLC ("*Invest-U*"). Columbia Capital assumed the operations of Invest-U beginning in 2012.

15. O'Malley was employed to work in California for Smead's asset management operations beginning in January 2010, and worked for Invest-U throughout the duration of its existence, later becoming employed by Columbia Capital upon its assumption of Invest-U's operations. In or about April 2012, Evans was employed by Defendants to work for Columbia Capital in its California office.

16. At all relevant times, Plaintiffs, Smead, and Columbia Capital owed fiduciary obligations to Columbia Capital's clients to conform to the relevant standards of investment advisers, including the standards set forth in *California Corporations Code* §25238 ("*Section 25238*").

17. Under Section 25238, Plaintiffs, Smead and Columbia Capital were prohibited from undertaking any activities which did not conform to "fair, equitable and ethical principles," which included the prohibitions contained in 10 *California Code of Regulations* § 260.238 ("*Investment Advisers: Fair, Equitable and Ethical Principles*"). For example, Columbia Capital was prohibited from

> Recommending to a client to whom investment supervisory, management or consulting services are provided the purchase, sale or exchange of any security without reasonable grounds to believe that the recommendation is suitable for the client on the basis of information furnished by the client after reasonable inquiry concerning the client's investment objectives, financial situation and needs, and any other information known or acquired by the adviser after reasonable examination of such of the client's records as may be provided to the adviser;
>
> [...]
>
> Inducing trading in a client's account that is excessive in size and frequency in view of the financial resources, investment objectives and character of the account.

18. At relevant times, Smead engaged in an aggressive investment strategy, but it was the persistent observation of those around him that Smead did not have an understanding of basic investment concepts or the risks associated with the investments he was making, and refused to listen to those who sought to either educate him as to the severity of the risks being incurred. Consequently, Smead was responsible for the loss of tens of millions of dollars in 2013.

19. Thereafter, Columbia Capital sought to undertake efforts to reign in the risks posed by Smead's aggressive investments. However, beginning in the summer of 2014, Smead took at least

two (2) steps which caused Columbia Capital to incur tremendous risks, risks which went far beyond the ordinary risks posed by an asset management operation, including even one with the high-risk strategy that Smead had previously undertaken. These two (2) steps also undid the efforts that had been taken to reign in the risks associated with investments subsequent to Smead's massive 2013 losses.

20. First, Smead began making changes to the critical database spreadsheets that Columbia Capital relied upon for its operations. Specifically, the reporting and order generation process were changed in such a way that would cause the company's databases to diverge from reality.

21. Smead's obsession with recovering his previous losses drove him to insist on a substantially higher leverage and trading velocity well beyond the capabilities of his internally-designed systems to track or manage. His fundamental ignorance of gains calculations would also often drive him to insist on investment activity which needlessly created taxable gains and transaction costs. In simple terms, Smead began *"churning"* his own account, i.e. trades were closed out and re-posted to the database at a pace that (a) did not allow for actual execution, (b) invariably obscured the true results of trades, and (c) created a constant need for a time-consuming reconciliation process that became impossible to manage. Smead's "system" often would cause trades to be posted as though their results had already been realized (which was not the case), resulting in internal reporting that was essentially fictional.

22. Columbia Capital relied upon its databases both in making investments, but equally as important, in responding in a timely manner to risks that arise. The potential consequences to flaws in that system were thus extremely grave and alarming to O'Malley and Evans, and created risks far beyond those that could ever be reasonably expected for an ordinary asset management company.

23. Second, beginning in the summer of 2014, Smead made a change in his investments strategies that significantly elevated risk to an unprecedented extent, namely Smead's increasing reliance on a third-party stock rating service named Market Trend Signal (but that was referred to by him internally as *"The Guru"*). Smead's stated reasons for relying upon the Guru were not based upon the Guru's actual legitimacy (e.g. a proven record of investment results), but based purely on cosmetic reasons.

24. Based upon investment advice from this un-vetted and unrelated third party, Smead triggered a sizable increase in the amount of trading in Columbia Capital's common stock portfolio, and initiated a series of poorly-timed trades.

24. Third party investment services are generally risky and relying on them to any significant degree is understood by experienced industry professionals to be ill-advised, even under a best case scenario. Here, however, the increase in the volume of risky trades made at the behest of an unvetted third party were combined with a database which increasingly could not be relied upon to accurately track the risks and rewards arising from that same trading. This increased pace of trading (a) hastened the speed with which Columbia Capital's internal reporting was becoming "divorced from reality" (and the undermining of its risk assessment), and (b) increased the potential risk to Columbia Capital's investors by a truly dangerous degree.

25. At all relevant times, Columbia Capital, as an asset manager, as set forth above, owes and owed fiduciary duties to all of its investment clients. O'Malley and Evans came to the conclusion that the increased and pronounced new risks being undertaken by Columbia Capital were inconsistent with the fiduciary obligations owed by Columbia Capital to their clients, and that Columbia Capital could not continue to operate in the high-risk fashion that Smead insisted upon without violating its fiduciary duties to its clients. Indeed, at all relevant times, one of Columbia Capital's investor clients included and includes a charitable foundation, the Hartwell Foundation, which upon information and belief, is a foundation created for the benefit of sick children.

26. Both O'Malley and Evans informally sought out Smead and conveyed to him their concerns that Columbia Capital was violating its fiduciary duties to its clients. However, Smead was unwilling to listen to or address their concerns and instead threatened their jobs if they did not capitulate to his decisions, regardless of the risks imposed (which threats were consistent with the overall hostile work environment Smead maintained as a matter of course).

27. In late October 2014, O'Malley and Evans sent letters, *inter alia*, to Smead which again referenced their concerns that Columbia Capital was violating its fiduciary duties and causing them to violate their own fiduciary duties. Almost immediately after these letters were sent, Smead fired both individuals.

## ADDITIONAL FACTUAL ALLEGATIONS RELATING TO EVANS

28. Prior to working for Columbia Capital, Evans lived in Milwaukee, Wisconsin with her husband and ten-year old daughter. Evans, who has 20 years of experience with hedge funds and smaller money managers, was persuaded to move to California and accept employment with Columbia Capital based upon representations made to her by Smead at her Skype job interview in April 2012.

29. These representations by Smead included that (1) Columbia Capital was a typical investment company without any unusual features, one consistent with her experience; (2) there was a "Chinese wall" between the investments relating to the Foundation and investments relating to the family/corporate accounts, (3) Columbia Capital did not rely upon him but was set up to operate and continue "long after he was gone", and (4) that she would receive an annual bonus.

30. Based upon these representations, Evans (a) forewent a second interview at a Rochester firm which was likely to employ her (and where she expects she would still be employed, had she not accepted work at Columbia Capital) and (b) relocated her family, including her husband and her ten-year old daughter, to California.

31. Soon after arriving, however, Evans learned the true facts. First, Columbia Capital was far from typical and had a portfolio makeup that was strikingly different from that of a typical firm, and with atypical relationships with its custodians. Smead himself had highly untraditional (and often, bizarre and/or completely incorrect) notions concerning investments, risk and leverage.

32. Second, there was no "Chinese wall" as was represented, and investments for the two types of entities were soon freely being commingled (at significant risk for the Foundation, and to the Evans's considerable distress).

33. Third, contrary to Smead's claims that Columbia Capital did not rely upon him, Columbia Capital was dominated by Smead, who continuously pressed for more aggressive investing, despite the considerable losses his strategies were incurring and alarms relating thereto that were being raised by his employees. In addition, Smead had not adequately planned for a replacement, or a transition upon his death, and Columbia Capital was thus not prepared to operate "long after he was gone."

34. Prior to employing Evans, Smead had apparently made the unwritten decision to cease paying bonuses to his investment employees, and had failed to do so thereafter.

35. Had Evans known the true facts, she would have pursued an alternate employment opportunity in Rochester, and/or not accepted employment with Smead and moved her family from Wisconsin to California at considerable expense and stress.

36. As set forth above, Evans's termination is a proximate result of the facts that have been misrepresented, namely she was terminated after objecting to the mishandling of Foundation investments (which a "Chinese wall" would and should have resolved) and Smead's high-risk investment strategies, which she contends were misrepresented to her prior to her employment.

### ADDITIONAL FACTUAL ALLEGATIONS RELATING TO O'MALLEY

37. Prior to his termination, on or about October 9 and 10, 2014, O'Malley provided testimony in a Nevada lawsuit filed against Smead and Columbia Capital by a former owner of Columbia' predecessor Invest-U LLC, Bret Magpiong, namely *Magpiong v. Invest-U, LLC et al.*, Clark County Nevada Case No. A-11-652480-C (the "*Magpiong case*").

38. Subsequent to that deposition, O'Malley observed that Smead had become more hostile towards him. O'Malley also informed Smead that he was troubled by answers he had given at his deposition in the Magpiong case, and wanted to change certain of his testimony to be more accurate.

39. California has long recognized that it is contrary to the interests of the state, public policy and sound morality to allow an employer to discharge any employee because the employee gives truthful testimony, which policy is embodied in the common law as well as *California Labor Code* §230(b).

40. Upon information and belief, and in the alternative, Plaintiffs allege that Smead's termination of O'Malley was improperly motivated by a desire to retaliate against O'Malley for (a) testimony he had previously proffered in the Magpiong case, and (b) the testimony O'Malley threatened to continue to offer (which is inconsistent with Smead's version of events in the Magpiong case).

## FIRST CAUSE OF ACTION– WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY AND IN RETALIATION FOR WHISTLEBLOWING

*(By All Plaintiffs Against All Defendants)*

41. Plaintiffs re-allege and incorporate herein by reference as though set forth specifically herein the allegations contained in paragraphs 1 through 40.

42. As set forth above, at relevant times, Plaintiffs identified that Smead was operating Columbia Capital in a manner that was not in compliance with California law. Specifically, at all relevant times, Smead and Columbia Capital owed fiduciary obligations to Columbia Capital's clients to conform to the relevant standards of investment advisers, including the standards set forth in *California Corporations Code* §25238 ("*Section 25238*") which prohibited Columbia Capital from undertaking any activities which did not conform to "fair, equitable and ethical principles," and which included the prohibitions contained in 10 *California Code of Regulations* § 260.238 ("*Investment Advisers: Fair, Equitable and Ethical Principles*"), including those set forth in paragraph 17 above.

43. Based upon the foregoing, Plaintiffs objected to Smead both orally and in writing that his course of conduct was preventing the Plaintiffs and Columbia Capital from rendering services in accordance with their fiduciary duties, and that Plaintiffs were unwilling to take further actions that were inconsistent with their duties, including those set forth above.

44. In response to their complaints, and as a proximate result of those complaints, Smead terminated the Plaintiffs' employment.

45. Upon information and belief, Plaintiffs allege that they were terminated because they reported Defendants' unlawful business practices both to Smead as well as to the Hartwell Foundation, refused to participate in Defendants' unlawful business practices, and/or refused to take actions wherein he himself would be required to violate the law, including objecting to continuing to render services to Smead despite his decisions that would require Plaintiffs to violate various laws and fiduciary duties (including those embodied by the authorities set forth above).

46. It is an unlawful employment practice to discriminate against any person because that person opposed any unlawful business practices or because that person filed a report concerning unlawful business practices. Nevertheless, in contravention of this law and the policy of the State of California that individuals should not be retaliated against for complaining of unlawful business practices, Defendants did retaliate against the Plaintiffs for having made a report of such practices.

47. As a direct and proximate result of the aforementioned violations of statute and public policy, Plaintiffs have suffered and will continue to suffer: (a) injury and damage to their occupation and professional reputation as may be shown according to proof; (b) emotional distress, suffering, mental anguish, inconvenience, loss of enjoyment of life; and, (c) such other damages and losses as may be shown according to proof, including lost income and benefits.

48. The above-recited actions of Defendants were done with malice, fraud and oppression, and reckless disregard of Plaintiffs' rights. Defendants engaged in their offensive conduct despite the awareness of the effect on the Plaintiffs (as well as, potentially, clients of Columbia Capital and others). As a result of these and other actions, Plaintiffs are entitled to an award of punitive damages.

49. Defendants' misconduct was also in violation of *Labor Code* §1102.5(c), in that Defendants retaliated against the Plaintiffs for refusing to participate in violations of California law. In addition to Plaintiff's damages, Plaintiffs are entitled to damages under that section, including that pursuant to *Labor Code* §1102.5(f), Defendants are liable for a civil penalty not exceeding Ten Thousand Dollars ($10,000).

## SECOND CAUSE OF ACTION – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

*(By O'Malley against All Defendants)*

50. Plaintiffs re-allege and incorporate herein by reference as though set forth specifically herein the allegations contained in paragraphs 1 through 40.

51. As set forth above, California has long recognized that it is contrary to the interests of the state, public policy and sound morality to allow an employer to discharge any employee because the employee gives truthful testimony, which policy is embodied in the common law as well as *California Labor Code* §230(b).

52. As set forth above, subsequent to his deposition in the Magpiong case, and his truthful testimony therein, O'Malley observed that Smead had become more hostile towards him. O'Malley also informed Smead that he was troubled by some of the answers he had given at his deposition in the Magpiong case, and wanted to change certain of his testimony to be more accurate.

53. Plaintiffs are informed and believe that Smead's termination of O'Malley was improperly motivated by a desire to retaliate against O'Malley for (a) testimony he had previously proffered in the Magpiong case, and (b) the testimony O'Malley threatened to continue to offer (which is inconsistent with Smead's version of events in the Magpiong case). Said termination was thus in violation of California public policy.

54. As a direct and proximate result of the aforementioned violations of statute and public policy, O'Malley has suffered and will continue to suffer: (a) injury and damage to his occupation and professional reputation as may be shown according to proof; (b) emotional distress, suffering, mental anguish, inconvenience, loss of enjoyment of life; and, (c) such other damages and losses as may be shown according to proof, including lost income and benefits.

55. The above-recited actions of Defendants were done with malice, fraud and oppression, and reckless disregard of said Plaintiff's rights. Defendants engaged in their offensive conduct despite the awareness of the effect on said Plaintiff (as well as, potentially, clients of Columbia Capital and others). As a result of these and other actions, O'Malley is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION – MISREPRESENTATIONS IN VIOLATION OF CALIFORNIA LABOR CODE §970

*(By Evans against All Defendants)*

56. Plaintiffs re-allege and incorporate herein by reference as though set forth specifically herein the allegations contained in paragraphs 1 through 40.

57. California Labor Code §970 ("*Section 970*") states in pertinent part as follows,

*No person... directly or indirectly, shall influence, persuade, or engage any person to change ... from any place outside to any place within the State... for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:*

    (a)    *The kind, character, or existence of such work; [or]*

    (b)    *The length of time such work will last, or the compensation therefor[.]*

58. As set forth above in paragraphs 28 to 36, above, Defendants violated *Section 970* by making misrepresentations which lured Evans to California from the State of Wisconsin, and which misrepresentations were false, including that (1) Columbia Capital was a typical investment company without any unusual features, one consistent with her experience, (2) there was a "Chinese wall" between the investments relating to the Foundation and investments relating to the family/corporate accounts, (3) Columbia Capital did not rely upon him but was set up to operate and continue "long after he was gone", and (4) that she would receive an annual bonus (the "*Misrepresentations*").

59. As set forth above, each of these Misrepresentations was false: (1) Columbia Capital is an extremely unusual firm with a portfolio makeup strikingly different from that of a typical firm, atypical relationships with its custodians, and completely dominated by Smead, an individual with uneducated and highly untraditional (and often, bizarre and/or completely incorrect) notions concerning investments, risk and leverage; (2) there was no "Chinese wall" between the Foundation and family/corporate accounts, and investments for the two types of entities were soon freely being commingled (at significant risk for the Foundation to which Evans owed a fiduciary duty); (3) Columbia Capital was not set up to continue "long after" Smead was gone, but was instead dominated by Smead, who (a) continuously pressed for more aggressive investing, despite the considerable losses his strategies were incurring and alarms relating thereto that were being raised by his employees, and (b) Smead had not adequately planned for a replacement, or a transition upon his death, and had acted in material respects at relevant times directly contrary to such a misrepresentation, and Columbia Capital was thus not prepared to operate "long after" he was gone;

1  and (4) prior to employing Evans, Smead had apparently made the unwritten decision to cease paying bonuses to his investment employees, and had failed to do so thereafter.

60. In reliance upon the Misrepresentations and in ignorance of their falsity, Evans changed her place of residence by moving her family from Wisconsin to California for purpose of working for the Defendants. Only thereafter did she learn the falsity of the Misrepresentations, and she had no way to learn of their falsity prior thereto.

61. As a proximate result of the Misrepresentations, Evans was persuaded to move from Wisconsin, relinquish a potential opportunity at another firm, incur travel and moving expenses, and suffer other such damages in an amount according to proof. Plaintiff was further damaged by the loss of bonuses, and ultimately, by the loss of her employment when she complained about the atypical practices of Columbia Capital and Smead terminated her employment for those complaints.

62. In addition to her damages, in an amount according to proof, Evans is entitled to double damages pursuant to *California Labor Code §972*, which provides in relevant part that *"any person, or agent or officer thereof who violates any provision of Section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations."*

63. The aforementioned conduct of Defendants were an intentional misrepresentation, deceit and/or concealment of material facts known to the Defendants with the intent of depriving her of her legal rights or otherwise causing her injury, and was despicable conduct in that it subjected Evans (and her family) to cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION-- BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

*(By All Plaintiffs Against All Defendants)*

64. Plaintiffs re-allege and incorporate herein by reference as though set forth specifically herein the allegations contained in paragraphs 1 through 40

65. California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

66. At all relevant times, Defendants employed Plaintiffs pursuant to oral and/or implied employment agreements, inherent in which was the implied covenant of good faith and fair dealing. A key term in such agreements was that Plaintiffs would be entitled to receive an annual bonus. Such employment agreement contained an implied covenant of good faith and fair dealing, which obligated Defendants to perform the terms and conditions of the agreement fairly and in good faith and to refrain from any act that would deprive Plaintiffs of the benefits of the contract.

67. While employed by Defendants, upon information and belief, Plaintiffs allege that Smead unilaterally and in bad faith instructed Columbia Capital to refuse to pay his investment employees any amount in bonus, despite their efforts on his behalf (and that Columbia Capital followed this instruction). Upon information and belief, Plaintiffs allege that Smead's motivation was not based upon any failure on Plaintiffs' part to perform their jobs. However, in making that decision, Smead nevertheless unilaterally punished those investment employees, including O'Malley and Evans, despite (a) promises made to both prior to their employment and (b) his not withholding bonuses for his other employees. Such decision deprived O'Malley and Evans of the benefits of their employment agreement with Smead, and constituted a breach of the implied covenant of good faith and fair dealing inherent to their employment agreements with Defendants.

68. Upon information and belief, Plaintiffs allege that Smead refused to pay the bonuses of O'Malley and Evans not because of any poor performance on their part but in order to use them as scapegoats for investment losses caused by his own ineptitude, ongoing failure and inability to understand basic investment concepts, and refusal to listen to the warnings of his employees. Such motives were thus retaliatory in nature and extraneous to the employment relationship, and intended to deprive Plaintiffs of the benefits thereof.

69. As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial, including loss of benefits under their employment agreements, but which Plaintiffs are informed and believe and based thereon allege is not less than the jurisdictional limit of this Court.

WHEREFORE, Plaintiff prays for judgment as follows:

## PRAYER FOR RELIEF

### ON THE FIRST CAUSE OF ACTION

1. General and special damages, according to proof;
2. Punitive damages, according to proof;
3. Civil penalty pursuant to Labor Code §1102.5;

### ON THE SECOND CAUSE OF ACTION

4. General and special damages, according to proof;
5. Punitive damages, according to proof;

### ON THE THIRD CAUSE OF ACTION

6. General and special damages, according to proof;
7. Punitive damages, according to proof;
8. For double damages pursuant to *California Labor Code* §972;

### ON THE FOURTH CAUSE OF ACTION

9. General and special damages, according to proof;

### ON ALL CAUSES OF ACTION

10. For costs of suit incurred herein;
11. For interest at the maximum rate allowed by law; and
12. For such other relief as may be just.

Dated: February 18, 2015                    SHERMAN LAW GROUP

By: *Richard* [signature]
RICHARD LLOYD SHERMAN, ESQ.
Attorney for Plaintiffs KRISTIN EVANS and
PAT O'MALLEY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Richard Lloyd Sherman, Esquire (SBN #106597)<br>Sherman Law Group, APC<br>9454 Wilshire Boulevard, Suite 850<br>Beverly Hills, California 90212<br>TELEPHONE NO.: (310) 246-0321   FAX NO.: (310) 246-0305<br>ATTORNEY FOR (Name): | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**02/19/2015 at 11:29:43 AM**<br>Clerk of the Superior Court<br>By Elizabeth Cramer, Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 Civic Center Drive West<br>MAILING ADDRESS: Central Justice Center<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Civil | |
| CASE NAME:<br>Pat O'Malley, an individual, et al. v. Columbia Capital LLC, et al. | |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2015-00772397-CU-WT-CJC |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Peter Wilson<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [✓] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): Four (4)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 19, 2015
Richard Lloyd Sherman, Esq.
(TYPE OR PRINT NAME)       ► /s/ Richard (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition